[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Ann Caron, as Administratrix of the Estate of James Caron, and individually, instituted this proceeding by filing a six-count complaint, alleging negligence and loss of consortium in connection with her husband's death. On July 7, 1993, James Caron (Caron) was working for his employer, the City of Danbury (City), in the area of Clapboard Ridge Road in Danbury. He was electrocuted when the equipment he was operating struck overhead power lines owned and maintained by the Connecticut Light Power Company (CL P). Ann Caron sued the City, CL P and Roald Haestad, Inc. (Haestad), the engineering firm that designed the "ten year water distribution system improvement program" (program) that Caron was working on at the CT Page 4324 time of his death. In addition to being Caron's employer, the City was the owner of the property on which the work was being performed.
In count one, Ann Caron alleges that CL P was negligent in that it, inter alia, failed to: (1) properly insulate the overhead electrical wires; (2) move the wires around the work site; (3) warn Caron and other workers at the site of the dangers of the wires; (4) de-energize the wires near the job site; and (5) install high visibility devices on the wires so that they could be seen by Caron and the other workers.
In count three, she asserts that Haestad was negligent in that it, inter alia, failed to: (1) engineer the program so as to minimize the dangers posed by the overhead wires; (2) make site visits to assess the dangers posed to Caron and his co-workers; (3) communicate with CL P so as to minimize risks to workers; and (4) provide and oversee proper training for the workers on the project so as to minimize the dangers posed by the wires.
In count five, she claims that the City was negligent in that it, inter alia, failed to: (1) inspect the job site to determine its hazardous condition; (2) warn Caron or his co-workers of the dangers posed by the overhead wires; (3) provide proper devices or safeguards to render the premises reasonably safe; and (4) remedy the dangerous condition at the job site when it knew or should have known that the condition could cause injury to Caron or other construction workers. Counts two, four and six sound in loss of consortium on behalf of Ann Caron, individually, and are based on the respective allegations in counts one, three and five.
The City moved to intervene as a co-plaintiff pursuant to Sec. 31-293 of the General Statutes on the ground that as Caron's employer, it has made workers' compensation payments to the estate, and is therefore entitled to reimbursement for such payments out of any award recovered by Ann Caron. The court, Moraghan, J., granted the motion to intervene on July 17, 1995. In its two-count complaint, the City alleges that CL P and Haestad were negligent for the reasons alleged by Ann Caron in her complaint. In addition, the City alleges that CL P violated its duties pursuant to Sec. 16-11 of the General Statutes and the Connecticut Department of Public Utilities Regulation 16-11-102.
Haestad filed an answer and special defense to the CT Page 4325 plaintiff's complaint, in which it asserted comparative negligence by Caron and "one or more intervening party." On November 30, 1995, CL P filed an answer and special defense to the City's intervening complaint, in which it asserted that Caron was comparatively negligent in causing his own injuries. Haestad subsequently filed an amended answer with four special defenses reciting, respectively, that: (1) the intervening parties "failed to adhere to the appropriate safety methods at the time of the accident"; (2) Caron was comparatively negligent; (3) it is immune from liability pursuant to 31-293; and (4) that it has an independent legal relationship with the City arising from its design of the water distribution "program," at the City's request, which relationship "created a duty on the part of the city to inspect, maintain and repair the premises in question, as well as [to] adequately warn [workers] of a dangerous condition." It also answered the City's intervening complaint, claiming four special defenses which are essentially identical to the special defenses alleged in response to the plaintiff's complaint. For the reasons discussed herein, Haestad's January 23, 1996 answer and special defenses to the intervening complaint are the operative pleading that is the subject of the City's motion to strike.
The City, as an intervening plaintiff, has moved to strike CL P's special defense of comparative negligence on the ground that comparative negligence is a legally insufficient defense to an action based upon Sec. 31-293 of the General Statutes. On the same day, the City filed a motion to strike Haestad's special defense of comparative negligence on the same grounds.
The City argues that a third party tortfeasor cannot raise the negligence of the injured party's employer as a special defense where the employer has intervened as a party plaintiff pursuant to Sec. 31-293a. It relies on Durniak v. August Winter Sons Inc. 222 Conn. 775, 778, for that proposition, as well as several Superior Court decisions in support of its position. Haestad responds that the City's motion to strike is "moot" since it (Haestad) filed an amended answer and special defenses subsequent to the filing of the motion. The City asserts that Haestad filed its amended answer and special defenses without the court's permission as required by Sec. 176 of the Practice Book.
CL P argues that because the City is a party defendant on a premises liability theory, in addition to being an intervening plaintiff, it is vulnerable to a special defense of comparative CT Page 4326 negligence. It continues that Durniak, relied upon by the City, recognizes this principle. Additionally, at oral argument, CL P argued that the "independent legal relationship" exception referred to by the court in Durniak is present here because the City is both a defendant and an intervening plaintiff.
"A motion to strike is the proper procedural vehicle to challenge the legal sufficiency of any special defense." GatewayBank v. Herman, Superior Court, judicial district of Danbury at Danbury, Docket No. 315947 (May 15, 1995, Stodolink, J.); Sec. 152(5) of the Practice Book. "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." Grant v. Bassman, 221 Conn. 465, 472 73;Bennett v. Automobile Ins. Co. of Hartford, 230 Conn. 795, 802; Sec. 164 of the Practice Book.
Preliminarily, it is noted that since the filing of an amended pleading acts as a withdrawal of the original pleading;Royce v. Westport, 183 Conn. 177, 179; the court will, consequently, treat the City's motion to strike as being directed towards Haestad's amended answer to the intervening complaint. Since Haestad's first and fourth special defenses each contain allegations of comparative negligence by the City, the City's motion to strike is considered directed towards Haestad's first and fourth special defenses.
The court in Durniak v. August Winter Sons Inc., supra, held that it is improper for a defendant "to raise the negligence of the plaintiff's employer as a special defense in an answer to the intervening complaint of the plaintiff's employer in a case where the intervening complaint is based solely upon the statutory rights accorded the plaintiff's employer under . . . 31-293[.]" Id., n. 3. In reaching that decision, the court reasoned that because an employer's right to obtain reimbursement from a third party tortfeasor is a statutory claim that is derived in its entirety from 31-293 (a), the employer's claim does not fall within the compass of 52-572h (the comparative negligence statute).
However, in a footnote, the court remarked: "A different result might follow if the special defense alleged not merely the negligence of the employer but included some other basis for liability such as the existence of an independent relationship between the defendant and the employer." Id., 782, n. 5. Based on CT Page 4327 this comment, several superior courts have concluded that where the defendant-tortfeasor has alleged the existence of an independent relationship between it and the employer, the special defense of comparative negligence can be raised. See, e.g.,McGahee v. Safeway Moving, 14 Conn. L. Rptr. 349 (March 20, 1995, Flynn, J.); Boland v. Conn. Resources Recovery Authority,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 296290 (May 11, 1995, Hauser, J.).
In accordance with this apparent exception to the general rule enunciated in Durniak, the City's motion to strike Haestad's special defense is denied since Haestad alleges the existence of an independent relationship with the City; namely, that Haestad was hired by the City to design the water distribution program referred to above. This relationship, Haestad alleges, created a duty on the part of the City to inspect, maintain and repair the premises, as well as to warn workers such as Caron of the dangers associated with the premises. This court firmly believes that this is the kind of "independent relationship between the defendant and the employer" that the Durniak court contemplated. Accordingly, the motion to strike Haestad's first and fourth special defenses is denied.
No allegation of an independent relationship is made by CL P, however, and therefore CL P's special defense of comparative negligence by the City is legally insufficient. Although it argues that the City is susceptible to a comparative negligence defense because it is both a defendant and an intervening plaintiff, this fact does not, in and of itself, constitute an independent relationship between the City and CL P within the meaning of the Durniak exception. The City's status as a plaintiff and defendant may be significant for other reasons, but not for the purposes of this motion. The City's motion to strike CL P's special defense of comparative negligence is, accordingly, granted.
MORAGHAN, J.